IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| DAVID GARRIE and JERRY WILLIAMS, on behalf of themselves and others similarly situated, | § § § § | |
| Plaintiffs, | § § | |
| V. | § § | CIVIL ACTION NO. _____ |
| BC TECHNICAL, INC., | § § | |
| Defendant. | § § | |

## PLAINTIFFS' ORIGINAL COLLECTIVE ACTION COMPLAINT

Plaintiffs David Garrie and Jerry Williams, on behalf of themselves and others similarly situated, file their Original Collective Action Complaint complaining of Defendant BC Technical, Inc., ("BC Technical," or "Defendant"), and would show the Court as follows:

1.      This is a collective action suit to recover unpaid overtime wages brought under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*  During their employment with BC Technical, Mr. Garrie, Mr. Williams, and their similarly situated Field Service Engineers worked substantial overtime hours.  But – while BC Technical charged its customers extra for "overtime" service its Field Service Engineers provided – it never paid the Field Service Engineers any overtime pay in compliance with the FLSA.   Rather, BC Technical misclassified all of its Field Service Engineers as "exempt" from overtime under the FLSA.

2.      That the Field Service Engineers – whose primary duty is to manually service and fix medical equipment using routine mental processes and many tools from their approximately 65-pound tool-boxes – are not exempt from overtime pay under the FLSA is crystal clear: As explained below, not a single exemption from overtime under the FLSA even remotely applies to the Field Service Engineers.

## THE PARTIES AND JURISDICTION

3.      Plaintiff Mr. Garrie is a natural person residing in Highlands, Texas. He was employed by BC Technical to perform work primarily in Texas, with a substantial amount of his work done in the Southern District of Texas.  Mr. Garrie has standing to file this lawsuit.  His notice of consent is attached.

4.      Plaintiff Mr. Williams is a natural person residing in Montgomery, Texas.  He was employed by BC Technical to perform work primarily in Texas, with a substantial amount of his work done in the Southern District of Texas.  Mr. Williams has standing to file this lawsuit.  His notice of consent is also attached.

5.      The "Members of the Class" are all current and former Field Service Engineers who were employed by the Defendant during the three-year period preceding the filing of this complaint.  Like the named Plaintiffs, these persons were and are engaged in interstate commerce in performing their duties for Defendant.

6.      Defendant BC Technical is headquartered at 7172 S. Airport Rd., West Jordan, UT 84084, and incorporated under the laws of Utah. BC Technical may be served with citation through its registered agent for service, Incorp Services, Inc., 815 Brazos, Suite 500, Austin, Texas 78701.

7.      In July 2009, BC Technical was acquired by MSouth Equity Partners of Atlanta, Georgia.  According to its website, MSouth Equity Partners is a private equity investment firm that supports management teams with acquisitions and recapitalizations of companies typically valued between $25 million and $125 million.  At that time, MSouth Equity Partners had BC Technical bring in several new officers, including its President and Chief Executive Officer, Mark Alvarez.

8.     BC Technical regularly employs persons in Texas, and has regularly employed persons in Texas for years.  BC regularly performs work for customers in Texas, and has regularly performed work for its customers in Texas for years.  The Court has personal jurisdiction over BC Technical based on both general and specific jurisdiction.

9.     The Court has subject matter jurisdiction over this case based on both federal question jurisdiction and diversity jurisdiction.  There is federal question jurisdiction because Plaintiffs base claims on federal law, specifically the FLSA.  There is diversity jurisdiction because Mr. Williams and Mr. Garrie are Texas residents, BC Technical is a citizen of Utah that maintains its principal place of business in Utah, and the matter in controversy exceeds $75,000.00, excluding interest and costs.

## FACTS

10.     Mr. Garrie began his employment with BC Technical in Texas in June 2007, as a Field Service Engineer.  Mr. Garrie's employment with BC Technical ended in March 2009.

11.     Mr. Williams began his employment with BC Technical in Texas in March 2005, as a Field Service Engineer.  Mr. Williams' employment with BC Technical ended on August 4, 2010.

12.     BC Technical employs a dedicated sales force in various states.  The salespersons on the sales force are responsible for obtaining new clients to sell service contracts to and maintaining relationships with the Company's existing customers.  Plaintiffs and putative collective action members were not salespersons.  Rather, they were Field Service Engineers responsible for servicing and fixing the machines the salesperson sold service contracts on to BC Technical's customers.  In other words, the sales force obtained new service contracts, and the Field Service Engineers serviced the customers after they were under contract.

-3-

13.     Plaintiffs were among approximately 50 Field Service Engineers actively employed by BC Technical across the country at any one time.

14.     The Field Service Engineers are dispersed in various states.   They are not predominantly clustered in any one state.

15.     BC Technical employs more Field Service Engineers than any other job position within BC Technical.   This is because the Field Service Engineers do the work that produces the vast majority of BC Technical's revenues.

16.     BC Technical generates revenues and profits as a result of the work performed by its Field Service Engineers.   Indeed, BC Technical's entire business model is centered on making money off of the work its Field Service Engineers perform for BC Technical.   The Field Service Engineers are thus not some ancillary part of BC Technical.   Rather, they are figuratively the engine that powers the BC Technical financial and operational locomotive.

17.     Since 2006, BC Technical has made a profit every year.   BC Technical's annual profits since 2006 have been in the millions of dollars.

18.     BC Technical is the nation's largest non-OEM (original equipment manufacturer) service provider specializing in Molecular Imaging machines.

19.     BC Technical currently serves over 500 clients across the United States of America, providing maintenance services to hospitals and medical centers for certain of their medical equipment.   BC Technical provides that service through its Field Service Engineers.

20.     During his entire employment with BC Technical, Mr. Garrie was employed as a Field Service Engineer.

21.     During his entire employment with BC Technical, Mr. Williams was employed as a Field Service Engineer.

22.     The Field Service Engineer position at BC Technical is not a position that requires advanced knowledge in a field of science or learning that is customarily acquired by a prolonged course of specialized intellectual instruction.

23.     In its advertisings for Field Service Engineers, from 2005 until present, BC Technical did not list as a requirement that the candidate must have any particular educational level of achievement to be qualified for the job.

24.     Mr. Garrie's highest level of education is approximately three years of college, without any degree attained.

25.     Mr. Williams' highest level of education is a two-year Associate's Degree.

26.     Like Plaintiffs, most Field Service Engineers at BC Technical do not have Bachelor's Degrees.  Indeed, some Field Service Engineers currently working for BC Technical do not even have two-year Associate's Degrees.

27.     BC Technical does not maintain company offices or facilities for its Field Engineers.  Rather, the Field Service Engineers are stationed at their homes.

28.     During their entire employment with BC Technical, Plaintiffs' primary duty as Field Service Engineers was to travel to BC Technical's customers' locations, which were typically hospitals and other medical facilities, and to fix and service molecular imaging equipment.

29.     In driving to BC Technical's customers' locations, Plaintiffs drove their own personal vehicles, none of which are "commercial vehicles" as defined by 49 U.S.C. § 31132(1).

30.     None of the BC Technical Field Service Engineers drove "commercial vehicles" as defined by 49 U.S.C. § 31132(1) in performing their job for BC Technical.  Rather, they all

drove their own personal, non-commercial vehicles in performing their job for BC Technical. Often, they drive pick-up trucks or SUVs.

31.     Plaintiffs and their similarly situated Field Service Engineers dressed like typical servicemen who fix and service machines, dressing in clothes such as blue or black jeans and pull over or button-down shirts, sometimes with BC Technical's logo embroidered on them.

32.     Mr. Garrie's primary duty at BC Technical was the same primary duty he had as a Field Service Engineer with multiple prior employers between October 1983 and his employment with BC Technical in June 2007, including a total of 12 years with GE Medical n/k/a GE Healthcare, and he and his coworker Field Service Engineers at each of those employers received overtime at the rate of time and one-half their regular rate when they worked in excess of 40 hours in a workweek.

33.     Mr. Williams' primary duty at BC Technical was the same primary duty he had as a Field Service Engineer with three prior employers in the same industry (Toshiba American Medical Systems, Inc. ("Toshiba"), ADAC Laboratories n/k/a Philips Medical Systems ("Philips"), and GE Medical Systems n/k/a GE Healthcare), over a 15 year period from 1990 until 2005, and he and his coworker Field Service Engineers at each of those three employers received overtime at the rate of time and one-half their regular rate when they worked in excess of 40 hours in a workweek.

34.     Many current Field Service Engineers working at BC Technical were employed as Field Service Engineers by other major competitors in the industry, including but not limited to Philips, GE Healthcare, and Siemens, before they went to work for BC Technical.

35.     BC Technical seeks to hire people with experience working in the industry as Field Service Engineers.  To BC Technical, in hiring Field Service Engineers, relevant specific

experience in the industry is more important to have than any specific educational level. Indeed, the majority of BC Technical's Field Service Engineers had field service experience in the industry prior to being hired by BC Technical.

36.     BC Technical does not typically hire new graduates of four-year colleges straight out of college go directly into being Field Service Engineers. In fact, upon information and belief, BC Technical has never hired any new graduate of a four-year college to directly become a Field Service Engineer.

37.     Upon information and belief, BC Technical has never gone to any four-year colleges campus to recruit new graduates, or soon to be graduates, to directly become Field Service Engineers at BC Technical.

38.     BC Technical hires some new graduates of two year technical college programs to go through a lengthy intra-company mentoring / apprenticeship program that gives them a year or more of on-the-job experience before they are allowed to become Field Service Engineers.

39.     A significant number of BC Technical's present and former executives were formally employed by other major competitors in the industry, including but not limited to Philips, GE Healthcare, and Siemens. Hence, those executives knew it was the norm in the industry to pay overtime to Field Service Engineers. For example, BC Technical's current President and CEO, Mark Alvarez, worked as a General Manager for GE Medical Systems. BC Technical's Chief Commercial Officer, Allen L. Smith, served in numerous Senior Executive Management positions with GE Healthcare. And, BC Technical's Vice President of Corporate Accounts, Ken Smith, worked for GE Healthcare in leadership positions.

40.     The work Plaintiffs performed as their primary duty during their entire employment with BC Technical was not office work. Rather, Plaintiffs did no office work.

41.     The work Plaintiffs performed as their primary duty during their entire employment with BC Technical was not non-manual work.  Rather, Plaintiffs' work was manual work – fixing and servicing machines.   Dispatchers from BC Technical's home office in Utah call or e-mail the Field Service Engineers with the customer's call for service, and the Field Service Engineer contacts the customer to arrange for their service call.  The Field Service Engineer then travels to the customer's site and performs the work.

42.     The work Plaintiffs performed as their primary duty during their entire employment with BC Technical was not predominantly intellectual in character.   Rather, Plaintiffs' work was clearly and definitely "routine mental, manual, mechanical or physical work."  29 C.F.R. § 541.301(b).

43.     In sum, the work Plaintiffs performed as their primary duty during their entire employment with BC Technical involved routine mental processes and was (a) mechanical; (b) manual; (c) physical; and (d) often dirty.  It involved fixing medical equipment by the regular, frequent, and every single work day use of tools such as screw-drivers, crescent wrenches, Allen wrenches, vice grips, hacksaws, ball peen hammers, cable cutters, steel brushes, pliers, socket sets, tweezers, utility knives, wire crimpers, cable ties, chisels, grease guns, electric drills, and feeler gauges.  Mr. Garrie carried an approximately 65-pound toolbox with him every day of the job to house these tools.  Mr. Williams also carried a 65-pound toolbox with him every day of the job to house these tools.  Other Field Service Engineers also carried the same or similar toolboxes.

44.     During their entire employment with BC Technical, Plaintiffs frequently worked more than 40 hours in a workweek, and were non-exempt employees under the FLSA, but BC Technical did not ever pay them overtime when they worked more than 40 hours in a workweek.

-8-

45.     Rather, BC Technical paid Plaintiffs a flat salary, plus commissions ranging from approximately 4% to 7% of a pool of specified revenues once certain revenue thresholds were met.  BC Technical paid its other Field Service Engineers the same way.

46.     BC Technical billed and continues to bill some or all of its customers specifically for "overtime" at the rate of one and one-half of the regular hourly rate charged to the customer, or some other extra "overtime" charge, when a Field Service Engineer works past a certain time of day.   This business practice implicitly suggests to the customer that the "overtime" charge is related to the actual payment of overtime by BC Technical to its Field Service Engineers under the FLSA.  But, in truth, BC Technical pays no overtime pay to its Field Service Engineers under the FLSA, and never has.

47.     At some point in time, BC Technical did begin paying the Field Service Representatives a very small, separate "billable overtime commission" (represented on the Field Service Engineers' pay stubs as "Billable OT Comm."), which was a tiny percentage of the revenue that BC Technical received from its customers' payments specifically for the aforementioned "overtime" charges.  One of the reasons BC Technical did this was to incentivize the Field Service Engineers to work even more overtime.

48.     BC Technical told Plaintiffs that it did not have to pay them overtime because it was paying them the aforementioned commissions instead.  BC Technical executives and/or managers told some of its other Field Service Engineers the same thing.   BC Technical's statements in this regard are simply incorrect.   Upon information and belief, BC Technical's executives and/or managers knew their statements in this regard were simply incorrect, and made the statements to distract the Field Service Engineers aware from focusing on their rights to actual overtime pay at time and one-half their regular rate pursuant to the mandate of the FLSA.

49.     During part or all of the last three year period preceding the filing of this lawsuit, some or all of BC Technical's corporate executives knew that Toshiba paid overtime to their Field Service Engineers at the rate of time and one-half their regular rate when they worked in excess of 40 hours in a workweek. During part or all of the last three-year period preceding the filing of this lawsuit, some or all of BC Technical's corporate executives knew that Philips paid overtime to their Field Service Engineers at the rate of time and one-half their regular rate when they worked in excess of 40 hours in a workweek.  During part or all of the last three-year period preceding the filing of this lawsuit, some or all of BC Technical's corporate executives knew that GE Healthcare paid overtime to their Field Service Engineers at the rate of time and one-half their regular rate when they worked in excess of 40 hours in a workweek. During part or all of the last three year period preceding the filing of this lawsuit, some or all of BC Technical's corporate executives knew that Siemens paid overtime to their Field Service Engineers at the rate of time and one-half their regular rate when they worked in excess of 40 hours in a workweek.

50.     At the annual national meeting of BC Technical Field Service Engineers in Utah each year, the BC Technical Executives would have a Question and Answer session.  During that session, one or more Field Service Engineer would always ask BC Technical executive(s), including the Chief Operating Officer since September 2007, William Biddle, why they did not receive overtime pay.  The question made sense to ask because, like the Plaintiffs, many of them had worked for competitors in the industry and received overtime pay.

51.     The BC Technical executive(s), including William Biddle, never directly answered that question in any logically coherent way that actually made any sense.  It was very clear to the Field Service Engineers that the BC Technical executive(s), including William Biddle, were uncomfortable with the question, and that they were dodging it.  In fact, BC

Technical executive(s)' dodging of the question at this meeting became so obvious and repeated, that it became somewhat of a joke among some of the Field Service Engineers. The CEO, and the other highest-ranking executives of BC Technical attended these meetings. Although BC Technical's executives said they would circulate the notes from these Question and Answer sessions to the Field Service Engineers, they never did.

52.     Mr. Garrie and Mr. Williams reported to Dick Green (Area Central Region Service Manager). BC Technical employs approximately four or five Area Region Service Managers across the country. The Field Service Engineers report to their respective Area Region Service Manager. The Area Region Service Managers report to the COO, Biddle.

53.     Defendant routinely required or was aware that Mr. Garrie worked more than 40 hours per workweek. Mr. Garrie's boss, Dick Green (Area Central Region Service Manager) repeatedly told Mr. Garrie to work overtime to get his work done, and knew he and other Field Service Engineers frequently worked overtime.

54.     Defendant routinely required or was aware that Mr. Williams worked more than 40 hours per workweek. Mr. Williams' boss, Dick Green, repeatedly told Mr. Williams to work overtime to get his work done, and knew he and other Field Service Engineers frequently worked overtime.

55.     Dick Green's boss, the COO since 2007, William Biddle, knew full well that the Field Service Engineers at BC Technical often worked overtime. Biddle also knew full well that BC Technical's primary competitors in the industry paid their Field Service Engineers overtime at the rate of time and one-half their regular rate when they worked in excess of 40 hours in a workweek. Biddle also knew that BC Technical's Field Service Engineers were not exempt from overtime under the FLSA.

56.     Biddle knows full well that the Field Service Engineers at BC Technical often worked overtime.  Biddle also knows full well that BC Technical's primary competitors in the industry paid their Field Service Engineers overtime at the rate of time and one-half their regular rate when they worked in excess of 40 hours in a workweek.  Biddle also knows that BC Technical's Field Service Engineers are not exempt from overtime under the FLSA.

57.     Under the FLSA, employers such as BC Technical are generally required to pay employees time and one-half their regular rate for all hours worked over 40 in a workweek. *See* 29 U.S.C. § 207(a)(1).  There are some exemptions to this requirement.  Under the law, those exemptions are narrowly construed, and the burden of proof to establish them lies with the employer. *Vela v. City of Houston*, 276 F.3d 659, 666 (5th Cir. 2001).

58.     None of the FLSA's exemptions from overtime apply to the Plaintiffs.  In fact, none are even remotely applicable.

59.     None of the FLSA's exemptions from overtime apply to any of BC Technical's Field Service Engineers.  In fact, none are even remotely applicable.

**Executive Exemption Not Applicable**

60.     Plaintiffs were not exempt from overtime under the FLSA's "Executive Exemption."  To qualify for the executive employee exemption, all of the following three duties' tests must be met: (a) the employee's primary duty must be managing the enterprise, or managing a customarily recognized department or subdivision of the enterprise; (b) the employee must customarily and regularly direct the work of at least two or more other full-time employees or their equivalent; and (c) the employee must have the authority to hire or fire other employees, or the employee's suggestions and recommendations as to the hiring, firing, advancement,

promotion or any other change of status of other employees must be given particular weight.  29 C.F.R. § 541.100.  Plaintiffs satisfy none of these three tests.

61.     During his employment with BC Technical, Mr. Garrie's primary duty was not of management of the Company or of a customarily recognized department or subdivision.

62.     During his employment with BC Technical, Mr. Garrie did not customarily and regularly direct the work of two or more employees or the equivalent.   Rather, throughout his employment, Mr. Garrie did not supervise any other employees.

63.     During his employment with BC Technical, Mr. Garrie did not have the authority to hire or fire other employees, nor did he have the power or authority to make any suggestions or recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees.

64.     During his employment with BC Technical, Mr. Williams' primary duty was not of management of the Company or of a customarily recognized department or subdivision.

65.     During his employment with BC Technical, Mr. Williams did not customarily and regularly direct the work of two or more employees or the equivalent.   Rather, throughout his employment, Mr. Williams did not supervise any other employees.

66.     During his employment with BC Technical, Mr. Williams did not the authority to hire or fire other employees, nor did he have the power or authority to make suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees.

67.     In sum, Plaintiffs were not exempt under the "Executive Exemption," and did not even satisfy one of the three requirements of the exemption's duties' test.

68.     None of the BC Technical Field Service Engineers employed by BC Technical in the last three years are or were exempt under the "Executive Exemption."

69.     None of the BC Technical Field Service Engineers employed by BC Technical in the last three years satisfy or satisfied even one of the requirements of the Executive Exemption's duties' test.

**Administrative Exemption Not Applicable**

70.     Plaintiffs were not exempt from overtime under the FLSA's "Administrative Exemption."   To qualify for the administrative employee exemption, both of the following duties' tests must be met:  (a) the employee's primary duty must be the performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers; and (b) the employee's primary duty includes the exercise of discretion and independent judgment with respect to matters of significance.   29 C.F.R. § 541.200.  Plaintiffs satisfy neither test (a) nor (b).

71.     During his employment with BC Technical, Mr. Garrie's primary duty was not the performance of office or non-manual work directly related to the management or general business operations of BC Technical or BC Technical's customers.  Rather, his primary duty was merely to fix and service BC Technical's customers' machines at their locations using routine mental processes, manual labor, his tools, and technical manuals stored on site at the customers' location, as well as BC Technical provided technical manuals that were available in electronic form on a laptop computer issued by the Company to the Field Service Engineers.

72.     During his employment with BC Technical, Mr. Garrie's primary duty did not include the exercise of discretion and independent judgment with respect to matters of significance.  In fact, Mr. Garrie was merely a service person fixing and servicing equipment. He

-14-

followed technical manuals to fix and service the machines, as did other Field Service Engineers. BC Technical itself distributed technical manuals to its Field Service Engineers to direct them on how to perform their work fixing the machines.

73.     During his employment with BC Technical, Mr. Williams's primary duty was not the performance of office or non-manual work directly related to the management or general business operations of BC Technical or BC Technical's customers.  Rather, his primary duty was to fix and service BC Technical's customers' machines at their locations using routing mental processes, manual labor, his tools, and technical manuals stored on site at the customers' location, as well as BC Technical provided technical manuals that were available in electronic form on a laptop computer issued by the Company to the Field Service Engineers.

74.     During his employment with BC Technical, Mr. Williams' primary duty did not include the exercise of discretion and independent judgment with respect to matters of significance.  In fact, Mr. Williams was merely a service person fixing and servicing equipment. He followed technical manuals to fix and service the machines, as did other Field Service Engineers.  BC Technical itself distributed technical manuals to its Field Service Engineers to direct them on how to perform their work fixing the machines.

75.     In sum, Plaintiffs were not exempt under the "Administrative Exemption," and did not even satisfy one of the requirements of the exemption's duties' test.

76.     None of the BC Technical Field Service Engineers employed by BC Technical in the last three years are or were exempt under the "Administrative Exemption."

77.     None of the BC Technical Field Service Engineers employed by BC Technical in the last three years satisfy or satisfied even one of the requirements of the Administrative Exemption's duties' test.

**Learned Professional Exemption Not Applicable**

78.     Plaintiffs were not exempt from overtime under the FLSA's "Learned Professional Exemption."  To qualify for the learned professional employee exemption, all of the following duties tests must be met: (a) the employee's primary duty must be the performance of work requiring advanced knowledge, defined as work which is predominantly intellectual in character and which includes work requiring the consistent exercise of discretion and judgment; (b) the advanced knowledge must be in a field of science or learning; and (c) the advanced knowledge must be customarily acquired by a prolonged course of specialized intellectual instruction.  29 C.F.R. § 541.301. Plaintiffs satisfy none of these three tests.

79.     During his employment with BC Technical, Mr. Garrie's primary duty was not the performance of work requiring advanced knowledge in a field of science or learning customarily acquired by a prolonged course of specialized intellectual instruction. *See Vela v. City of Houston*, 276 F.3d 659, 675 (5th Cir. 2001) (explaining that EMTs and paramedics are not exempt professionals because they are not required to have an advanced degree in any specified field, so they, "lack the educational background to satisfy the education prong of the Learned Professional exemption"); *Young v. Cooper Cameron Corp.*, 586 F.3d 201 (2d Cir. 2009) ("product design specialist" was not within professional exemption from FLSA's overtime-pay provision, even though he performed work requiring depth of knowledge, experience, and responsibility, because the position required no formal advanced education, and the knowledge required for job was not customarily acquired by prolonged course of specialized intellectual instruction, *i.e.* most persons in position acquired their knowledge through experience); *Fife v. Harmon*, 171 F.3d 1173, 1177 (8th Cir. 1999) (the minimum qualifications for the plaintiffs' position as Airfield Operation Specialists were "a Bachelor's degree in aviation

-16-

management or a directly related field, or four years of full-time experience in aviation administration, or an equivalent combination of experience and education."  The court held the exemption inapplicable: "This is advanced knowledge from a general academic education and from an apprenticeship, not from a prolonged course of specialized intellectual instruction."); *Reeves v. ITT*, 357 F.Supp. 295, 303-04 (W.D. La. 1973) (finding that "microwave field engineer" was not within FLSA's exemption relating to professional employees on facts relating to educational background for the job that are very similar to this case).

80.     During his employment with BC Technical, Mr. Williams' primary duty was not the performance of work requiring advanced knowledge in a field of science or learning customarily acquired by a prolonged course of specialized intellectual instruction.  *See cases cited above, supra*.

81.     "The phrase 'customarily acquired by a prolonged course of specialized intellectual instruction' restricts the [Learned Professional] Exemption to professions where specialized academic training is a standard prerequisite for entrance into the profession.  The best prima facie evidence that an employee meets this requirement is possession of the appropriate academic degree."  29 C.F.R. § 541.301(d). "The typical symbol of the professional training and the best *prima facie* evidence of its possession is, of course, the appropriate academic degree, and in these professions an advanced academic degree is a standard (if not universal) prerequisite." 29 C.F.R. § 541.301(e)(1).  As the preamble to the Department's 2004 revisions to the Part 541 final rule further explained, jobs that "require only a four-year college degree in any field or a two-year degree as a standard prerequisite for entrance into the field . . . do not qualify for the learned professional exemption."  69 Fed. Reg. 22,122, 22,150 (Apr. 23, 2004); Wage and Hour Opinion Letters FLSA2005-35 (Oct. 3, 2005).

82.     The Field Service Engineer job Plaintiffs performed at BC Technical and other Field Service Engineers perform does not even require a four-year college degree.

83.     Many Field Service Engineers employed by BC Technical do not even have a four-year college degree.

84.     The Field Service Engineer job Plaintiffs performed at BC Technical and other Field Service Engineers perform does not even require a two-year college degree.

85.     Many Field Service Engineers employed by BC Technical, including Mr. Garrie, do not even have a two-year college degree.

86.     The Learned Professional Exemption further requires that the employees' primary duty consist of "work which is predominantly intellectual in character, and which includes work requiring the consistent exercise of discretion and judgment, as distinguished from performance of routine mental, manual, mechanical or physical work."  29 C.F.R. § 541.301(b).

87.     During his employment with BC Technical, Mr. Garrie's work was not predominantly intellectual in character and did not include work requiring the consistent exercise of discretion and judgment, as distinguished from performance of routine mental, manual, mechanical or physical work.   Rather, as described above, the work performed by Mr. Garrie as a Field Service Engineer at BC Technical was clearly and definitely more in the character of routine mental, manual, mechanical and physical processes than intellectual work requiring the consistent exercise of discretion and judgment.   29 C.F.R. § 541.301(d). *Cf. Vela v. City of Houston*, 276 F.3d 659, 676 (5th Cir. 2001) (stating as to EMT and Paramedics that "[w]e find that, although the Daley Plaintiffs use a small amount of discretion in their jobs, this discretion is not sufficient to establish "the consistent exercise of discretion and judgment" required by the discretion prong of the Learned Professional exemption.   Thus, the City failed to satisfy its

burden of proof on either prong of this exemption.  We find that the Daley Plaintiffs do not fall within the Learned Professional exemption as a matter of law.")

88.     During his employment with BC Technical, Mr. Williams' work was not predominantly intellectual in character and did not include work requiring the consistent exercise of discretion and judgment, as distinguished from performance of routine mental, manual, mechanical or physical work.  Rather, the work performed by Mr. Williams as a Field Service Engineer at BC Technical was clearly and definitely more in the character of routine mental, manual, mechanical and physical processes than intellectual work requiring the consistent exercise of discretion and judgment.  29 C.F.R. § 541.301(d).

89.     In sum, Plaintiffs were not exempt under the "Learned Professional Exemption," and did not even satisfy one of the three requirements of the exemption's duties' test.

90.     None of the BC Technical Field Service Engineers employed by BC Technical in the last three years are or were exempt under the "Learned Professional" exemption.

91.     None of the BC Technical Field Service Engineers employed by BC Technical in the last three years satisfy or satisfied even one of the requirements of the Learned Professional Exemption's duties' test.

92.     Plaintiffs worked overtime regularly and frequently.

93.     BC Technical failed to pay Plaintiffs overtime compensation for hours worked over 40 in a workweek.

94.     BC Technical does not have a complete, accurate, and contemporaneous record of the number of hours worked per workweek by Plaintiff.

95.     Defendant routinely required or was aware that Field Service Engineers who are similarly situated to Plaintiff work and/or worked more than 40 hours per workweek.

96.     BC Technical never paid the Field Service Engineers similarly situated to Plaintiff overtime compensation for hours worked over 40 in a workweek.

97.     BC Technical does not have a complete, accurate, and contemporaneous record of the number of hours worked per workweek by the Field Service Engineers similarly situated to Plaintiffs.

98.     All conditions precedent, if any, to this suit, have been fulfilled.

### FLSA CLAIMS

99.     This action is authorized and instituted pursuant to the FLSA.  29 U.S.C. § 201, *et. seq*.

100.    At all material times, Plaintiffs were employees under the FLSA. 29 U.S.C. § 203(e).

101.    At all material times, the Field Service Engineers similarly situated to Plaintiff were and are employees under the FLSA. 29 U.S.C. § 203(e).

102.    At all material times, Defendant BC Technical was and is an eligible employer under the FLSA.  29 U.S.C. § 203(d).

103.    At all material times, Plaintiffs and those Field Service Engineers similarly situated to Plaintiffs routinely worked in excess of 40 hours per seven-day workweek.

104.    At all material times, Plaintiffs and those Field Service Engineers similarly situated to Plaintiffs routinely worked in excess of 40 hours per seven-day workweek and BC Technical knew or should have known that.

105.    At all material times, Plaintiffs and those Field Service Engineers similarly situated to Plaintiff were and are entitled to overtime compensation for hours worked over 40 in a seven-day workweek.  29 U.S.C. § 207(a)(1).

106.     At all material times, Defendant failed to pay Plaintiffs and those Field Service Engineers similarly situated to Plaintiffs overtime compensation for hours worked over 40 in a seven-day workweek.

107.     Defendant's violation of the FLSA was and remains willful within the meaning of 29 U.S.C. § 255(a).  *See Singer v. City of Waco*, 324 F.3d 813, 821-22 (5th Cir. 2003) (upholding a jury finding of willfulness where the employer knew its employees were being paid incorrectly).  BC Technical charged and continues to charge its customers for "overtime," for service the Field Service Engineers provide, but never paid any FLSA mandated overtime to the Field Service Engineers.

108.     Defendant has not made a good faith effort to comply with the requirements of 29 U.S.C. § 260.

109.     Where, as here, "the employers' actions or policies were effectuated on a companywide basis, notice may be sent to all similarly situated persons on a companywide basis."  *Ryan v. Staff Care, Inc.*, 497 F. Supp. 2d 820, 825 (N.D. Tex. 2007) (certifying nationwide class in FLSA misclassification case).

110.     Accordingly, Plaintiffs seek to represent a class under 29 U.S.C. § 216(b) on behalf of:

> "All current and former Field Service Engineers who were employed by Defendant during the three-year period preceding the filing of this complaint."

## **JURY DEMAND**

111.     Plaintiffs demand a jury trial.

## DAMAGES

112.     As a result of Defendant's violation of the FLSA, Plaintiffs and those Field Service Engineers similarly situated to Plaintiffs seek unpaid overtime wages, liquidated damages in an amount equal to unpaid overtime wages, and reasonable attorneys' fees.   29 U.S.C. §§ 216(b), 260.  Plaintiffs also seek pre- and post-judgment interest and costs of court.

## PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiffs, on behalf of themselves and those similarly situated, ask that the court issue a summons for Defendant to appear and answer, and that Plaintiffs and those similarly situated be awarded a judgment against Defendant for damages delineated in the above-section, entitled "Damages" and for all other appropriate relief to which Plaintiffs are justly entitled.

Respectfully submitted,

OBERTI SULLIVAN LLP

By:     s/ Mark J. Oberti
        Mark J. Oberti
        State Bar No. 00789951
        S.D. Texas No. 17918
        723 Main Street, Suite 340
        Houston, Texas  77002
        (713) 401-3555 – Telephone
        (713) 401-3547 – Facsimile

        ATTORNEY-IN-CHARGE FOR PLAINTIFFS

OF COUNSEL:

OBERTI SULLIVAN LLP
723 Main Street, Suite 340
Houston, Texas  77002
(713) 401-3555 – Telephone
(713) 401-3547 – Facsimile

ATTORNEYS FOR PLAINTIFFS

-22-

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

DAVID GARRIE and JERRY WILLIAMS, on §
behalf of themselves and others similarly §
situated, §
§
   Plaintiffs, §   CIVIL ACTION NO. _____
§
V. §
§
BC TECHNICAL, INC., §
§
   Defendant.

## NOTICE OF CONSENT

  I, the undersigned, a current of former employee of the employer(s) named in this lawsuit, hereby consent to be a party plaintiff in the above action, which is a collective action under the federal Fair Labor Standards Act to collect unpaid wages and other damages.  I agree to be bound by the outcome of this proceeding.

DAVID W. GARRIE
_____
Name (Print)

_____
Signature

Dated: _Sept 20, 2010_

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

DAVID GARRIE and JERRY WILLIAMS, on §
behalf of themselves and others similarly §
situated, §
§
    Plaintiffs, §        CIVIL ACTION NO. _____
§
V. §
§
BC TECHNICAL, INC., §
§
    Defendant. §

## NOTICE OF CONSENT

I, the undersigned, a current of former employee of the employer(s) named in this lawsuit, hereby consent to be a party plaintiff in the above action, which is a collective action under the federal Fair Labor Standards Act to collect unpaid wages and other damages. I agree to be bound by the outcome of this proceeding.

Jerry Williams
Name (Print)

Signature

Dated: 9-20-10